**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| **ERIC JOSEPH DEPAOLA, #1145137,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **BRADLEY TAYLOR,** *et al.,* | ) | |
| **Defendants.** | ) | **Civil Action No. 7:10cv000398** |
| | ) | |
| | ) | **By: Pamela Meade Sargent** |
| | ) | **United States Magistrate Judge** |
| | ) | |

Plaintiff, Eric Joseph DePaola, a Virginia inmate proceeding *pro se*, filed a civil rights complaint, pursuant to 42 U.S.C. § 1983 with jurisdiction vested in 28 U.S.C. § 1343. In his amended complaint, plaintiff alleges that the defendants,[1] individuals at the Virginia Department of Corrections', ("VDOC"), Red Onion State Prison, ("ROSP"), violated his constitutional rights by using excessive force against him, failing to protect him from that use of excessive force and misusing ambulatory restraints. All dispositive matters in this action were referred to the undersigned to submit proposed findings of fact and a recommended disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

---

[1] Plaintiff appears to be attempting to sue some of the defendants in both their official and individual capacities for acts he alleges defendants committed under color of state law. However, insofar as such defendants are sued in their official capacities, they are immune from suit. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

This matter is before the court on defendants' motions for summary judgment.[2] The court notified DePaola of defendants' motions as required by *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir. 1975), and advised him that his failure to reply to the defendants' motions may result in dismissal and/or summary judgment. As DePaola filed a response to defendants' motions, and the time allotted for filing any further response has expired, this matter is ripe for disposition.

Upon review of the record, the undersigned finds that there are questions of material fact as to whether defendant Correctional Officers Christopher Dutton and Mark D. Mullins used excessive force against DePaola on September 14, 2009, and as to whether defendant Correctional Officer Bradley Taylor failed to protect him from that use of excessive force. The court further finds that DePaola failed to properly exhaust his claims related to the use of ambulatory restraints before filing this action and that the defendants are entitled to judgment as a matter of law on those claims. Finally, the court finds that there are no issues of material facts as to all of DePaola's other claims and that the defendants are entitled to judgment as a matter of law on those claims. Accordingly, it is recommended that the defendants' motions for summary judgment be granted in part and denied in part.

---

[2] Some of the defendants filed a motion for summary judgment on December 22, 2010. (Docket Item No. 25.) Thereafter, on January 21, 2011, these same defendants filed a supplemental motion for summary judgment. (Docket Item No. 34.) The remaining defendants filed a motion for summary judgment on February 7, 2011. (Docket Item No. 39.) These motions collectively will be referred to as the defendants' motions for summary judgment or defendants' motions.

# I.    Factual Background

### A. Facts Alleged in Plaintiff's Verified Amended Complaint and Response in Opposition

DePaola organizes the claims in his Amended Complaint, (Docket Item No. 18), into Counts I and II. Claims of excessive force and failure to protect related to the actions of Dutton, Taylor and M. Mullins, as well as a claim of verbal abuse, including sexual comments, by Dutton and Taylor, comprise Count I of the Amended Complaint. Claims related to the use of ambulatory restraints by defendants Stacey Mullins, Tracy Ray, Lafayette Fleming, Bradley Ramey, Michael Phipps, Brandon Roberts, Taylor, M. Mullins, Tony Adams and Ferrell Stanley comprise Count II of the Amended Complaint.

In Count I of his Amended Complaint, DePaola alleges that on September 14, 2009, Dutton used excessive force against him during an "alleged altercation." (Amended Complaint at 10.) Specifically, DePaola contends that Dutton struck him in the face with his head, shoved his knee in his stomach and threw him on the concrete floor. (Amended Complaint at 10.) DePaola claims that while lying motionless on the floor, not resisting or struggling and after having stated "I give up, I do not have a weapon," Dutton struck him with closed fists approximately 20 to 30 times. (Amended Complaint at 11.) DePaola claims Dutton also struck him in the back of his head with "hands held together like a hammer" and placed him in a choke hold. (Amended Complaint at 11.) DePaola states that he attempted to shield himself during the attack by placing his hands over the back of his head and pleaded with Dutton to "please stop." (Amended Complaint at 11.) DePaola also alleges that Taylor failed to intervene during Dutton's alleged use of excessive

force. (Amended Complaint at 12.) DePaola alleges that M. Mullins used excessive force against him when he sprayed him with mace in the back of the head while he was lying on the floor in handcuffs and offering no resistance. (Amended Complaint at 12-13.)

DePaola further claims that Dutton and Taylor have sexually harassed and verbally threatened him "several times" since the September 14, 2009, incident. (Amended Complaint at 13.) In his Declaration In Opposition To Defendants' Motion For Summary Judgment, DePaola claims that on November 2, 2009, Dutton threatened him, stating he was going to "tell all the officers I know to write you charges to make sure you never get out of segregation." (Docket Item No. 37, Ex. B.) DePaola claims that Dutton also made a sexual comment on that date and told him he was going to throw away his mail. (Docket Item No. 37, Ex. B.) DePaola claims that Dutton made additional unprofessional comments on May 27 and June 10, 2010, stating "I hope you … kill yourself" and calling him an obscene word. (Docket Item No. 37, Ex. B.) Finally, DePaola alleges that on April 14, 2010, Taylor also engaged in vulgar name-calling. (Docket Item No. 37, Ex. B.)

In Count II of his Amended Complaint, DePaola contends that the use of ambulatory restraints following the September 14, 2009, incident constituted excessive force and deliberate indifference and violated his due process rights. According to DePaola, he was placed in ambulatory restraints approximately 15 to 20 minutes after the altercation, and he immediately complained that the restraints were too tight. DePaola contends that approximately 8 to 10 hours after being placed in the restraints, he told Correctional Officers S. Mullins, Adams and Stanley that the restraints were too tight and were causing injury. According to DePaola, his complaints were ignored by these defendants, and his restraints were

not loosened until approximately 36 hours after his initial complaints. The plaintiff further contends that defendants kept him in ambulatory restraints for approximately 42 hours, even though he was calm and cooperative during that entire period.

DePaola avers that he has attempted to properly exhaust his administrative remedies concerning all of the claims raised in the instant action. He asserts that administrative exhaustion was "unavailable and/or frustrated" regarding his allegations related to ambulatory restraints. (Docket Item No. 42, Attachment 1 at 2.) Specifically, he claims that he submitted an informal complaint on September 22, 2009, but that it was not properly processed, and he never received a response. DePaola asserts that he delayed filing a second informal complaint until October 12, 2009, because he never received a response to his first informal complaint.[3] He claims that, because he did not receive a response to the October 12, 2009, informal complaint until October 21, 2009, he was prevented from timely advancing in the grievance process. Thereafter, he submitted an informal complaint on April 15, 2010. He then submitted a grievance on April 26, 2010, and subsequently appealed that grievance on June 8, 2010. He also filed request forms on December 29, 2009, and April 1, 2010. In support of his assertions, DePaola attached multiple informal complaints, grievance forms and affidavits to his Complaint, Amended Complaint and Response in Opposition. These include grievances and formal complaints related to DePaola's claims in this lawsuit, as well as numerous other complaints which he claims show a consistent pattern of

---

[3] The informal complaint, which is included as an exhibit by both DePaola and the defendants, was signed by DePaola on October 12, 2009, but was not received until October 16, 2009.

problems concerning mail room processing and other alleged institutional violations.

DePaola states that, as a result of the attack by Dutton, he suffered bodily injury including, "multiple cuts, bruises and swelling in numerous areas of plaintiff's body that were visible for weeks after said brutal beating." (Amended Complaint at 20-21.) He also sustained a gash on his elbow that ultimately formed a scar. DePaola claims that during the attack he experienced dizziness, loss of breath and "excruciating pain" and that he "feared for [his] life." (Amended Complaint at 20.) Plaintiff also claims that for several weeks following the incident, he suffered from intense headaches which required medication. DePaola further contends that he suffered "excruciating pain" from the mace that M. Mullins sprayed into his wounds. (Amended Complaint at 21.) Plaintiff asserts that he has nightmares stemming from the attack, as well as continuing anxiety when he is in contact with corrections staff at ROSP.

DePaola also claims that he suffered injuries from the ambulatory restraints. He asserts that he suffered "physically, mentally and emotionally" during his confinement in the restraints and that he also suffered "swelling, rawness and extreme pain." (Amended Complaint at 21.) Plaintiff claims that he now has scars on his feet and hands which "are a constant reminder and provider of [psychological] agony." (Amended Complaint at 22.)

DePaola raises six claims for relief. DePaoloa alleges (1) that Dutton used an excessive amount of force during their physical altercation; (2) that M. Mullins used an excessive amount of force when he sprayed DePaola with mace; (3) that Taylor was deliberately indifferent to the use of excessive force by Dutton; (4) that

Dutton and Taylor have verbally abused him several times since the September 14, 2009, incident; (5) that Ray, Fleming, Ramey, Phipps, Roberts, Taylor and M. Mullins used excessive force and denied plaintiff his due process rights in their misuse of ambulatory restraints; and (6) that S. Mullins, Adams and Stanley were deliberately indifferent to use of excessive force and denial of due process by Ray, Fleming, Ramey, Phipps, Roberts, Taylor and M. Mullins related to the use of ambulatory restraints.

### B. Facts Alleged in Defendants' Affidavits

In support of their motions for summary judgment, defendants attached affidavits addressing DePaola's claims, as well as portions of DePaola's institutional record. The defendants' affidavits are in stark contrast to the plaintiff's contentions regarding the events which occurred on September 14, 2009. After his strip search, Dutton claims he instructed DePaola to accompany him to work in C-Building. (Docket Item No. 35, Ex. VI, ("Dutton Affidavit"), at 2.) However, DePaola, who was seated at a table in the middle of the pod, did not comply. (Dutton Affidavit at 2.) After Dutton ordered him a second time to accompany him, Dutton observed DePaola take his right hand from under the pod seat and pull a metal object that appeared sharp with a cloth or string wrapped around a small section of the object. (Dutton Affidavit at 2.) Dutton backed away from DePaola as far as he could and ordered him to lie down on the ground and drop the weapon. (Dutton Affidavit at 2.) DePaola then began to run towards him with the sharp object in his hand, ignoring Dutton's repeated orders to stop. (Dutton Affidavit at 2-3.) Dutton states, "By the time [DePaola] got to me, I used the force necessary to protect myself as I felt DePaola was attempting to kill me." (Dutton Affidavit at 3.) Dutton and DePaola struggled on the floor until assistance arrived. (Dutton

Affidavit at 3.) Once Officer Taylor arrived and sprayed him with mace, DePaola fell to the floor. (Dutton Affidavit at 3.) However, DePaola continued to resist and was not subdued until after additional assistance arrived, at which point he was restrained and handcuffed. (Dutton Affidavit at 3.) Dutton suffered injuries as a result of the altercation, including a puncture wound on his left shoulder blade and scratches and abrasions. (Dutton Affidavit at 3.)

Taylor's affidavit supports the affidavit filed by Dutton. Taylor observed Dutton and DePaola fighting and ordered DePaola to stop and lie on the floor. (Docket Item No. 26, Ex. I, ("Taylor Affidavit"), at 2.) Taylor "administered a [half-second] to a second burst of OC spray" after which DePaola fell to the floor. (Taylor Affidavit at 2.) However, DePaola continued to resist while lying on the floor, and Dutton struggled to restrain him. (Taylor Affidavit at 2.)

Sergeant M. Mullins claims that he did not spray DePaola with mace in the back of his head. (Docket Item No. 26, Ex. II, ("M. Mullins Affidavit"), at 2.) His affidavit supports the claims of Dutton and Taylor, contending that DePaola continued to fight Dutton even after falling to the prison floor and that he was not subdued and restrained until after the arrival of additional correctional officers. (M. Mullins Affidavit at 1.) The affidavit filed by Lieutenant L. Fleming also supports this version of events, claiming that DePaola refused restraint and continued to struggle while on the prison floor. (Docket Item No. 26, Ex. III, ("Fleming Affidavit"), at 1.) Lieutenant L. Fleming contends that Correctional Officer Robinette brought him a weapon he said he had recovered from the area of the incident. (Fleming Affidavit at 2.)

Both Dutton and Taylor deny sexually harassing or verbally abusing DePaola at any time following the incident on September 14, 2009. (Dutton Affidavit at 3; Taylor Affidavit at 2-3.)

Defendants contend that DePaola failed to exhaust his administrative remedies concerning his placement in ambulatory restraints, as alleged in Count II of the Amended Complaint. Accordingly, defendants assert those claims must be dismissed pursuant to 42 U.S.C. § 1997(e).[4] In support of this argument, defendants attached to their motions for summary judgment a copy of VDOC Division Operating Procedure, ("DOP"), 866.1, the grievance procedure available to DePaola at ROSP in September 2009, along with an affidavit from Rena Mullins, Grievance Coordinator, concerning DePaola's use of the grievance procedures. (Docket Item No. 26, Ex. V, ("Rena Mullins Affidavit"), at 1.)

R. Mullins states that ROSP has in place an Inmate Grievance Procedure that prisoners can utilize to resolve complaints, appeal administrative decisions and challenge the substance of procedures. (Rena Mullins Affidavit at 2.) According to Mullins, two levels of review exist for most regular grievances. (Rena Mullins Affidavit at 2.) Initially, the inmate receives a Level I review conducted at the institutional level. (Rena Mullins Affidavit at 2.) If the inmate is dissatisfied with that decision, he may appeal and receive a Level II review conducted at the Regional Level. (Rena Mullins Affidavit at 2.) The Regional Level is the last level of review for most grievances. (Rena Mullins Affidavit at 2.) If a grievance is not accepted, it is returned to the inmate and details are provided as to why the

---

[4] The court notes that the defendants concede in their answer to plaintiff's original Complaint that plaintiff exhausted his administrative remedies concerning Count I of the Complaint, claims 1-4.

grievance was not accepted. (Rena Mullins Affidavit at 2.) Inmates are oriented to the Inmate Grievance Procedure when they are received in the VDOC. (Rena Mullins Affidavit at 2.) According to Mullins and DOP 866.1, grievances are to be filed within 30 calendar days from the date of occurrence or incident. (Rena Mullins Affidavit at 2.) Also, before filing a formal grievance, an inmate must demonstrate he has made a good faith effort to informally resolve his complaint. (Rena Mullins Affidavit at 2.) This may be accomplished by filing an informal complaint form. (Rena Mullins Affidavit at 2.) If the informal complaint is not resolved to the inmate's satisfaction, he may then file a regular grievance. (Rena Mullins Affidavit at 2.)

According to Mullins, ROSP records reflect that DePaola submitted an informal complaint on October 16, 2009, regarding the duration of time he was placed in ambulatory restraints. (Rena Mullins Affidavit at 3.) DePaola was dissatisfied with the response to this informal complaint and filed a regular grievance on December 16, 2009. (Rena Mullins Affidavit at 3.) This grievance was rejected due to expired filing time. (Rena Mullins Affidavit at 3.) DePaola submitted a second informal complaint on October 16, 2009, stating that the ambulatory restraints were too tight. (Rena Mullins Affidavit at 3.) Also dissatisfied with the response to this informal complaint, DePaola filed a regular grievance on October 21, 2009. (Rena Mullins Affidavit at 4.) This grievance also was rejected due to expired filing time. (Rena Mullins Affidavit at 4.) DePaola did not request a review of the intake decisions within the required five-day time limit. (Rena Mullins Affidavit at 4.)

## II.    Standard of Review

Upon motion for summary judgment, the court must view the facts and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. *See Ross v. Commc'ns Satellite Corp*, 759 F.2d 355 (4th Cir. 1985). However, the court does not need to treat the Complaint's legal conclusions as true. *See, e.g., Custer v. Sweeney*, 89 F.3d 1156, 1163 (4th Cir. 1996) (stating a court need not accept plaintiff's "unwarranted deductions," "footless conclusions of law" or "sweeping legal conclusions cast in the form of factual allegations") (internal quotations and citations omitted); *Estate Constr. Co. v. Miller & Smith Holding Co. Inc.,* 14 F.3d 213, 217-18 (4th Cir. 1994). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). However, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (emphasis in original).

When a motion for summary judgment is made and properly supported by affidavits, depositions or answers to interrogatories, the adverse party may not rest on mere allegations or denials of the adverse party's pleadings. Instead, the adverse party must respond by affidavits or otherwise and present specific facts showing that there is a genuine issue of disputed fact for trial. *See* FED. R. CIV. P. 56(e).  If the adverse party fails to show a genuine issue of material fact, summary judgment, if appropriate, may be entered against the adverse party. A prisoner proceeding pro se in an action filed under § 1983 may rely on the detailed factual allegations in his verified pleadings to withstand a motion for summary judgment supported by

affidavits containing a conflicting version of the facts. *See Davis v. Zahradnick*, 600 F.2d 458, 460 (4th Cir. 1979). DePaola's Amended Complaint is verified. His response in opposition to the motion for summary judgment also is verified and is accompanied by affidavits by other prisoners.

### III.  Section 1983 Claims

A.  Excessive Force Claims

(1) Dutton

DePaola claims that Dutton used an excessive amount of force against him on September 14, 2009. To establish an Eighth Amendment excessive force claim against a prison official, an inmate must satisfy a two-pronged standard comprised of both a subjective inquiry (whether the defendant acted with a sufficiently culpable state of mind) and an objective inquiry (whether the force applied was objectively harmful enough to amount to a constitutional violation). *See Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996).

The subjective component of an excessive force claim requires an inmate to demonstrate that the force used by an institutional official inflicted unnecessary and wanton pain and suffering. *See Hudson v. McMillian*, 503 U.S. 1 (1992). In evaluating such a claim, "the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Hudson,* 503 U.S. at 6 (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). In determining whether a prison official acted maliciously and sadistically the court should consider: (1) the need

for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible officials; and (4) any efforts made to temper the severity of a forceful response. *See Hudson,* 503 U.S. at 7; *Williams*, 77 F.3d at 762.

To prove the objective component of his excessive force claim, the inmate "must show that correctional officers' actions, taken contextually, were 'objectively harmful enough' to offend 'contemporary standards of decency.'" *Stanley v. Hejirika*, 134 F.3d 629, 634 (4th Cir. 1998) (quoting *Hudson*, 503 U.S. at 8). This part of the analysis "evaluate[s] the force applied and the seriousness of the resulting injury against the need for the use of force and the context in which that need arose." *Stanley,* 134 F.3d at 634. The recent Supreme Court case *Wilkins v. Gaddy*, __ U.S. ___, 130 S. Ct. 1175 (2010), abrogated the Fourth Circuit interpretation of *Hudson* requiring dismissal of excessive force claims in the absence of more than *de minimis* injury. The Court recognized that lack of significant injury will be a factor in determining the necessity for force and the amount of force used, but held that injury and force are "only imperfectly correlated, and it is the latter that ultimately counts." *Wilkins,* 130 S.Ct. at 1178.

DePaola alleges that on September 14, 2009, Dutton struck him in the face with his head, shoved his knee in his stomach and threw him on the concrete floor. DePaola claims that, while lying motionless on the floor not resisting or struggling and after having stated "I give up, I do not have a weapon," Dutton struck him with closed fists approximately 20 to 30 times. (Amended Complaint at 11.) DePaola claims Dutton also struck him in the back of his head with "hands held together like a hammer" and placed him in a choke hold. (Amended Complaint at 11.) As a

result of these actions, DePaola claims to have suffered immediate excruciating pain, as well as multiple cuts, bruises, swelling and psychological trauma.

Dutton counters that DePaola ran towards him with a sharp object in his hand, ignoring Dutton's repeated orders to stop. Dutton contends that he used the force necessary to protect himself because he felt DePaola was attempting to kill him. He further contends that DePaola continued to resist attempts to restrain him, even after being sprayed with mace by Taylor and falling to the floor. The record also contains an authenticated video of the altercation. "[W]here…the record contains an unchallenged videotape capturing the events in question, [the court] must only credit the plaintiff's version of the facts to the extent it is not contradicted by the videotape." *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). DePaola has not challenged the videotape. It is clear from the video that DePaola initially approached and attacked Dutton. However, the court cannot determine from the videotape at what point DePaola stopped resisting Dutton's efforts to restrain him. Thus, the court cannot determine whether, once Dutton and DePaola drop to the floor, Dutton is attempting to control and restrain DePaola as he struggles and resists, or if Dutton continues striking DePaola with his fists, even after DePaola stops fighting back.

As discussed above, resulting injury, while a factor to consider, is no longer decisive in an excessive force case. *See Wilkins*, 130 S.Ct. at 1175. Thus, summary judgment cannot be properly granted merely on the basis of a lack of resulting injury. *See Wilkins*, 130 S.Ct. at 1175. Accordingly, the proper inquiry is whether Dutton's actions were "a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins*, 130 S.Ct. at 1178 (quoting

-14-

*Hudson*, 503 U.S. at 7).  If the court credits DePaola's version of events, Dutton acted maliciously and sadistically for the purpose of causing him harm.  If the court credits Dutton's version, DePaola's actions necessitated the continued use of force to restore discipline.

Therefore, the parties' evidence presents a dispute in fact as to whether the continued use of force by Dutton after DePaola fell to the floor was to "maintain or restore discipline" or was punitive. As such, the undersigned concludes that there is a genuine issue of material fact as to whether or not DePaola was subjected to a use of excessive force at the hands of Dutton on September 14, 2009.

Therefore, the court recommends denying defendants' motions for summary judgment regarding plaintiff's allegations of excessive force against Dutton, set forth in Count 1.

(2) Mark Mullins

DePaola claims that M. Mullins used excessive force against him on September 14, 2009, when he sprayed the back of his head with mace even though he was subdued, in handcuffs and not resisting.  DePaola claims that he suffered excruciating pain when the mace was sprayed into his wounds. M. Mullins counters that he did not spray DePaola in the back of the head with mace.

Thus, there also is a question of fact as to whether M. Mullins used excessive force on September 14, 2009.  If the court credits DePaola's version of events, M. Mullins acted maliciously and sadistically for the purpose of causing him harm. The use of mace against a securely confined inmate for the sole purpose

of inflicting pain is unconstitutional. *See Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984). If the court credits M. Mullin's version, he did not spray DePaola in the back of the head with mace. The court cannot determine from the videotape whether or not M. Mullins sprayed the back of the plaintiff's head with mace. Thus, the undersigned concludes that there is a genuine issue of material fact as to whether or not M. Mullins subjected DePaola to use of excessive force on September 14, 2009.

Therefore, the court recommends denying defendants' motions for summary judgment regarding plaintiff's allegations of excessive force against M. Mullins, set forth in Count 1.

B. Failure to Protect

DePaola also claims that Taylor failed to intervene and protect him from the use of excessive force by Dutton on September 14, 2009. The Eighth Amendment requires prison officials to take reasonable precautions to protect the safety of inmates. *See Farmer v. Brennan,* 511 U.S. 825, 832-33 (1994). To prevail on a failure to protect claim, an inmate must show that he was subjected to conditions that posed a substantial risk of serious harm and that prison officials were aware of and disregarded that risk. *See Farmer,* 511 U.S. at 834-37.

DePaola contends that Taylor, after spraying him with mace, stood approximately two to three feet away while Dutton beat him, yet did not intervene. As noted above, there is a material question of fact as to whether the amount of force used to subdue and maintain control over DePaola was excessive under the circumstances. There also is a material question regarding whether Taylor reasonably had time to intervene, if intervention was appropriate. Accordingly, the

undersigned concludes that there is a genuine issue of material fact as to whether Taylor knew of and disregarded an excessive risk to DePaola's safety as relates to the confrontation on September 14, 2009.

Therefore, the court recommends denying defendants' motions for summary judgment regarding plaintiff's allegations of failure to intervene against Taylor, as set forth in Count 1.

## C. Qualified Immunity

Defendants alternatively argue that they are entitled to the defense of qualified immunity with respect to all of DePaola's claims. However, because the court recommends that the defendants' motions for summary judgment regarding DePaola's other claims be granted on other grounds, the court will address the defense of qualified immunity regarding only the excessive force and failure to protect claims. The defense of qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a government official properly asserts the defense of qualified immunity, he is entitled to summary judgment if either: (1) the facts, taken in the light most favorable to the plaintiff, do not present the elements necessary to state a violation of a constitutional right; or (2) the right was not clearly established such that it would not have been clear to a reasonable officer

that his conduct was unlawful in the situation he confronted. *Pearson v. Callahan*, 129 S.Ct. 808, 815-16;[5] *Saucier v. Katz,* 533 U.S. 194, 202 (2001).

However, when resolution of the qualified immunity question and the case itself both depend upon a determination of what actually happened, summary judgment on grounds of qualified immunity is not proper. *See Buonocore v. Harris*, 65 F.3d 347, 359 (4th Cir. 1995). Accordingly, the district court should not grant summary judgment where "there remains any material factual dispute regarding the actual conduct of the defendants." *Buonocore,* 65 F.3d at 359-60. In the present case, the court already has determined that, viewing the facts in the light most favorable to DePaola, a reasonable trier of fact could conclude that the amount of force used to subdue and maintain control over DePaola violated the Eighth Amendment prohibition against cruel and unusual punishment. Thus, the court finds genuine issues of material fact exist regarding DePaola's conduct and defendants' conduct on September 14, 2009. Therefore, summary judgment on the ground of qualified immunity is not appropriate. *See Buonocore*, 65 F.3d at 359-60.

Therefore, the undersigned recommends that defendants' motion for summary judgment on the grounds of qualified immunity be denied.

---

[5] The Supreme Court's recent decision in *Pearson* overruled that part of *Saucier* which mandated that courts conduct the two-step qualified immunity inquiry in sequential order. *See Pearson*, 129 S. Ct. at 818; *see Saucier*, 533 U.S. at 205. Courts now "have the discretion to decide whether that procedure is worthwhile" and "determine the order of decision making that will best facilitate the fair and efficient disposition of each case." *Pearson*, 129 S. Ct. at 821. Otherwise, *Saucier* remains as binding precedent.

D. Verbal Abuse

DePaola claims that Dutton and Taylor have verbally abused him, including making sexual comments, since the September 14, 2009, incident. DePaola contends that Dutton threatened to steal his mail and tell other correctional officers to write out charges against DePaola. He further claims that Dutton and Taylor made inappropriate sexual or derogatory comments to him following the incident. Both Dutton and Taylor deny sexually harassing or verbally abusing DePaola at any time following the incident on September 14, 2009.

Verbal abuse of inmates by prison officials, without more, does not rise to the level of an Eighth Amendment violation. *See Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979), cited favorably in *Moody v. Grove*, 1989 WL 107004, at *1 (4th Cir. Sept. 19, 1989). The Constitution does not "protect against all intrusions on one's peace of mind," and verbal abuse and harassment by correctional employees alone does not state a constitutional claim. *Pittsley v. Warish*, 927 F.2d 3, 7 (1st Cir. 1991); *see also Collins*, 603 F.2d 825 (holding that the sheriff's actions in laughing at and threatening to hang the plaintiff were not sufficient to show the deprivation of a constitutional right). Therefore, an institutional employee's verbal harassment of an inmate or idle threats made to an inmate, even if they cause an inmate fear, anxiety or discomfort, do not present a claim of constitutional magnitude. *See Emmons v. McLaughlin*, 874 F.2d 351, 353-54 (6th Cir. 1989) (verbal threats causing fear for plaintiff's life is not an infringement of a constitutional right); *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (calling an inmate an obscene name did not violate his constitutional rights); *Lamar v. Steele*, 698 F.2d 1286 (5th Cir. 1983) ("Threats alone are not enough. A section 1983 claim only accrues when the threats or threatening conduct

result in a constitutional deprivation."); *Ellingburg v. Lucas*, 518 F.2d 1196, 1197 (8th Cir. 1975) (defamation does not implicate any constitutionally protected right); *Keyes v. City of Albany*, 594 F. Supp. 1147, 1155 (N.D.N.Y. 1984) ("[T]he use of vile and abusive language [including racial epithets], no matter how abhorrent or reprehensible, cannot form the basis for a § 1983 claim"). DePaola does not claim that Dutton and Taylor's actions went beyond obscene name-calling or that they acted on any of their alleged threats. Accordingly, even if DePaola has been subjected to verbal abuse and harassment, while inappropriate and unprofessional, such conduct does not amount to a constitutional injury.

Therefore, the court recommends granting defendants' motions for summary judgment regarding plaintiff's allegations of verbal abuse, including sexual comments, against Dutton and Taylor, set forth in Count 1.

E.  Ambulatory Restraints

Defendants claim that DePaola failed to exhaust his administrative remedies on his claims related to the use of ambulatory restraints set forth in Count 2. The court agrees. The Prison Litigation Reform Act, ("PLRA"), requires a prisoner to exhaust all available administrative remedies before bringing a claim under § 1983. *See* 42 U.S.C.A. § 1997e(a) (2003), *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (stating that "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory"); *Cutter v. Wilkinson*, 544 U.S. 709, 723 n.12 (2005). Furthermore, prisoners must not just initiate timely grievances, but also must make a timely appeal of any denial of relief through all levels of available administrative review. *See Woodford*, 548 U.S. at 85 (holding that the PLRA requires proper exhaustion of institutional administrative remedies before filing any federal suit challenging

prison conditions); *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (stating that the PLRA applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"); *Booth v. Churner,* 532 U.S. 731, 739 (2001) (finding that PLRA requires administrative exhaustion prior to the filing of a federal civil rights suit even if the form of relief the inmate seeks is not available through exhaustion of administrative remedies).

The Grievance Coordinator for ROSP, R. Mullins, reviewed the grievance records for DePaola and stated in her affidavit that the grievances he submitted with regard to his claims arising from the use of ambulatory restraints were returned due to expired filing time. Plaintiff had up to 30 days from the date of the incident to file a regular grievance after first filing an informal complaint. Plaintiff stated he did not file a regular grievance until October 21, 2009, more than 30 days after the incident. Under the procedures in place at ROSP, he was required to file both an informal complaint and a regular grievance within 30 days of the incident. However, pursuant to the DOP 866.1, "if 15 calendar days have expired from the date the [i]nformal [c]omplaint was logged without the offender receiving a response, the offender may submit a [g]rievance on the issue and attach the [i]nformal [c]omplaint receipt as documentation of the attempt to resolve the issue informally." (Docket Item No. 26, Enclosure A to Rena Mullins Affidavit at 6.) DOP 866.1 further provides that "each acceptable [i]nformal [c]omplaint will be logged…, assigned a tracking number, and the receipt portion … shall be removed and returned to the offender." (Docket Item No. 26, Enclosure A to Rena Mullins Affidavit at 6.) DePaola fails to explain why he did not follow up on the informal complaint he claims to have filed on September 22, 2009, to inquire about his

receipt and verify it had been logged. Thus, DePaola fails to demonstrate that he was unable to satisfy all required steps of the grievance procedure, or that his attempts to do so were frustrated. Accordingly, plaintiff's failure to timely file and completely appeal a grievance in accordance with DOP 866.1 means he failed to exhaust administrative remedies under the PLRA.[6] To hold otherwise would be contrary to the notion of strict compliance as well as the policy considerations behind § 1997e(a), especially judicial efficiency.[7]

Therefore, the court recommends that the defendants' motion for summary judgment be granted under § 1997(e)(a) regarding plaintiff's allegations of misuse of ambulatory restraints, as set forth in Count II of the Amended Complaint.

### PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following findings, conclusions and recommendations:

1. There are questions of material fact as to whether Dutton and M. Mullins used excessive force against DePaola on September 14, 2009, and as to whether Taylor failed to protect DePaola from any use of excessive force by Dutton. Thus, it is recommended that defendants' motions for summary judgment be denied as to DePaola's excessive force and failure to protect claims in Count I of the Amended Complaint;

---

[6] DePaola claims he could not exhaust his administrative remedies as to the ambulatory restraints because he was not charged with a disciplinary infraction. However, DOP 866.1 is not related to disciplinary charges. Moreover, to the extent that DePaola claims he was not provided with due process prior to being placed in ambulatory restraints, that claim, too, is unexhausted under § 1997e(a).

[7] Dismissal of this claim for failing to exhaust administrative remedies precludes the court from considering the merits of the plaintiff's claims.

2. Plaintiff fails to state a claim upon which relief may be granted based on verbal abuse by Dutton and Taylor. Thus, it is recommended that defendants' motions for summary judgment regarding this claim be granted; and

3. There are no genuine issues of material fact in dispute regarding DePaolo's claims regarding the use of ambulatory restraints. The plaintiff failed to produce evidence from which a fact-finder could find that he exhausted all available administrative remedies regarding these claims. Thus, it is recommended that the defendants' motions for summary judgment be granted regarding Count II of the Amended Complaint pursuant to § 1997(e)(a), on the ground that DePaolo failed to exhaust administrative remedies, and that these claims be dismissed without prejudice, with no finding as to the merits.

## **Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(c) (West 2006 & Supp. 2010):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable Samuel G. Wilson, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record and all unrepresented parties at this time.

ENTERED:  June 15, 2011.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE